IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 1, 2005

## COLLIER V. HARRIS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-20912     Arthur T. Bennett, Judge**

---

**No. W2004-01625-CCA-R3-PC  - Filed May 20, 2005**

---

The petitioner appeals from the post-conviction court's denial of post-conviction relief.  On appeal, he contends that he received the ineffective assistance of counsel when his trial counsel failed to properly investigate and prepare his case for trial.  Following our review, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Collier V. Harris.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William C. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

On September 19, 1995, the petitioner, Collier V. Harris, was convicted of felony murder and received a life sentence.  On direct appeal, this Court affirmed the conviction and sentence.  State v. Collier V. Harris, No. 02C01-9603-CR-00095, 1997 WL 746021, (Tenn. Crim. App., at Jackson, Dec. 3, 1997).  On September 13, 1999, the Tennessee Supreme Court issued an order remanding the case back to this Court.[1]  On remand, this Court re-affirmed the conviction and sentence.  State v. Collier V. Harris, No. W1999-02144-CCA-RM-CD, 1999 WL 1532323 (Tenn. Crim. App., at

---

[1] Our supreme court remanded the case for consideration in light of State v. Buggs, 995 S.W.2d 102 (Tenn. 1999).

Jackson, Dec. 29, 1999), perm. app. denied (Tenn. 2000). The following is a brief summary of the convicting evidence:

> Defendant entered the victim's home after 1:00 a.m. and before 5:00 a.m. on November 29, 1992. The Defendant and victim knew each other. The Defendant strangled the victim, struck her with a blunt object which smashed or actually burst her liver at four (4) different sites causing it to "bleed out," and stabbed her at least twelve (12) times, including two (2) wounds through the victim's heart. When he left her home, he took her new bank ATM card to a First Tennessee Bank in Millington, where the victim resided, and withdrew $30.00 from her account at approximately 5:10 a.m. on November 29, 1992. The Defendant's activities at the ATM machine were recorded on video tape. When Walter Blaydes, another acquaintance of the victim, left her home at approximately 1:00 a.m. on November 29, she was fine, and the ATM card remained on a table in her home where Blaydes had observed it earlier in the evening.

Harris, 1999 WL 1532323, at *1.

On February 4, 1999 the petitioner filed a *pro se* petition for post-conviction relief. Post-conviction counsel was appointed, the petition was amended twice, and a hearing was held. At the hearing, the petitioner claimed that his trial counsel was ineffective. According to the petitioner, his counsel refused to share discovery, failed to inform him of a plea offer, declined to visit him in jail to discuss the case, did not subpoena possible witnesses, did not investigate his case during the preliminary and trial stages, and generally neglected his case.

With regard to the petitioner's claim that counsel failed to investigate and subpoena potential witnesses, the petitioner stated that he gave names and phone numbers of witnesses who were with him before and after the crime occurred. The petitioner claimed that these witnesses should have been called as character witnesses at trial. The petitioner also claimed that his counsel failed to investigate Walter Blaydes as a possible suspect. With regard to the petitioner's other claims that counsel was unprepared and failed to investigate the petitioner's case, the petitioner stated in general terms that counsel did not advise him during the pretrial stage of his case, did not give the petitioner all discovery materials, failed to convey a plea offer, did not properly voir dire the jury, should have asked more questions about the DNA evidence, and failed to properly submit special instructions on circumstantial evidence to the court.

On cross-examination, the petitioner acknowledged that Blaydes had been investigated and the charges dismissed before the petitioner was arrested for the crime. Also, the petitioner could not explain how calling the potential witnesses he suggested would have helped his defense since those witnesses were not with him at the time the crime was committed. In addition, the petitioner admitted that he made several statements to individuals indicating that he killed the victim. The petitioner further admitted that he received over two hundred pages of discovery and could not

explain why more investigation of the State's witnesses and evidence was necessary for his defense.

The petitioner's original trial counsel testified that he was appointed to represent the petitioner. Counsel testified that after being appointed to the petitioner's case, he filed discovery motions eleven days later. He recalled visiting the petitioner over twenty times. He said that any plea offers brought to him by the State were relayed to the petitioner. He also said he received discovery in a timely manner, and when he received it, he went over it with the petitioner. He discussed his pre-trial investigation with the petitioner. Counsel explained that he did not file a motion for change of venue because he did not feel that there was much adverse publicity at the time. However, he admitted that he did not investigate newspaper articles in order to gauge the adverse publicity surrounding the homicide. He also explained that he did not request expert assistance because the law at the time did not provide for expert assistance in non-capital cases. Counsel admitted that he did not submit a jury questionnaire to the potential jury pool because he believed it was unnecessary. He recounted that he did not use jury questionnaires until 1996.

Counsel testified that his primary theory of defense was to establish reasonable doubt that the petitioner was the person who committed the crime. Counsel stated that initially Blaydes had been arrested and charged with the crime. Based upon this information, he investigated Blaydes. However, counsel explained that his investigation of Blaydes was cut short after he and his investigator went over to Blayde's house to interview him and he was not home. Later, counsel received information that Blaydes did not want to speak to him or his investigator. Counsel admitted that he did not speak with any of the police officers who arrested Blaydes for this homicide.

Counsel testified that he and his investigator attempted to locate potential witnesses on two separate occasions. They further attempted to talk to "just about everybody that [they] could," including the petitioner's father, uncle, and aunt. According to counsel, he also attempted to contact several of the State's witnesses who were to testify that they were victims of rape by the petitioner. However, counsel stated that he was unable to locate some of the State's witnesses, and others refused to speak to him or his investigator. He also stated that he tried to contact witnesses suggested by the petitioner, but the petitioner did not provide contact information, and therefore, he was unsuccessful.

Counsel testified that at the time, it was not the practice of his office to assign two attorneys to noncapital cases. Therefore, he did not feel the need to request assistance in this case notwithstanding the fact that two assistant attorney generals were prosecuting for the State. Counsel stated that he received the crime-scene report indicating that the fingerprint on the wall of the victim's house and some blood did not match the petitioner. He said he was aware of the report's inconsistencies and believed that he brought the inconsistencies to the jury's attention at trial.

Counsel testified that he recalled conducting a voir dire of the petitioner as to his right to testify and believed that the petitioner did not want to testify. Counsel also stated that he asked for special instruction on circumstantial evidence, but failed to submit the request in writing. Counsel admitted that he was aware Rule 30 of the Tennessee Rules of Criminal Procedure required that

special requests for jury instruction be made in writing. Counsel acknowledged that he failed to object to the prosecutor's argument suggesting the petitioner's propensity to commit this crime based upon allegations of rape. Counsel explained that he did not feel it necessary to request independent analysis of DNA evidence or request an expert because the State's DNA testing revealed a "1 in 426" probability that the DNA recovered under the victim's fingernails was the petitioner's, and he believed that the statute did not allow funding for additional experts in noncapital cases.

After a thorough review of the petitioner's claims, the post-conviction court set out in great detail an order denying post-conviction relief. The court credited trial counsel's testimony and found no deficient performance or prejudice entitling the petitioner to relief. The petitioner appealed.

## II. Analysis

On appeal, the petitioner contends that he received the ineffective assistance of counsel when his trial counsel failed to properly investigate and prepare his case for trial. In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this Court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. Id.

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Arnold v. State, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. Strickland, 466 U.S. at 688; see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. Id. at 697; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. Goad, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. Id. (citations omitted).

Upon review, we conclude that the record supports the post-conviction court's findings. The petitioner's claim that his trial counsel was ineffective is contradicted by trial counsel's testimony and some of the petitioner's own admissions at the post-conviction hearing. Counsel's testimony indicated that he promptly filed discovery motions, shared and reviewed all available discovery with the petitioner, conveyed all plea offers to the petitioner, contacted the petitioner a number of times prior to trial, investigated the case, attempted to contact potential defense witnesses, attempted to locate the State's witnesses, and prepared for trial based upon a legitimate defense strategy. Counsel's testimony also indicates that his decision not to request additional assistance of attorneys or experts during the trial stage of the case was a reasonable strategic choice based upon counsel's knowledge of the law at the time.

Even assuming counsel did commit some error in investigating the petitioner's case, the petitioner failed to demonstrate prejudice. At the post-conviction hearing, the petitioner could not explain how any of his allegations of ineffective assistance of counsel would have changed the outcome of the trial. The petitioner failed to establish how counsel's failure to investigate witnesses would have helped the petitioner's defense. Not only did the petitioner admit that these witnesses could only be helpful perhaps as character witnesses, but also the petitioner did not present any such witnesses at the post-conviction hearing. As a general rule, the presentation of these witnesses at the post-conviction hearing is necessary to prove that counsel's failure to utilize these witnesses resulted in prejudice to the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Also, the petitioner failed to establish how independent investigation into the DNA testing would have changed the outcome of the case. Though the State's evidence connecting the petitioner to the murder was mostly circumstantial, the petitioner conceded that he gave two confessions admitting that he killed the victim. Moreover, the State also presented evidence at trial showing that the petitioner used the victim's ATM card within the time frame of when the murder took place. Accordingly, it is clear from the record that the petitioner failed prove his claims of ineffective assistance by clear and convincing evidence.

### III. Conclusion

Following our review, we conclude that the record supports the post-conviction court's findings and affirm the judgment of the post-conviction court denying post-conviction relief.

_____
J.C. McLIN, JUDGE